CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUN 20 2007
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHRISTOPHE GRIFFIN, | ) | CASE NO. 7:06CV00396 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Respondent. | ) | U.S. MAGISTRATE JUDGE |

On June 29, 2006, Christophe Griffin ("petitioner") filed a Petition to Vacate, Set Aside or Correct his Federal Sentence ("petition") under 28 U.S.C. § 2255. The United States moved to dismiss, and on February 2, 2007, the presiding District Judge overruled the motion and referred the case to the undersigned under the authority of 28 U.S.C. § 636(b)(1)(B) to conduct an evidentiary hearing and render to the presiding District Judge a report setting forth findings, conclusions and recommendations for the disposition of petitioner's claims. For the reasons that follow, the undersigned will RECOMMEND that the presiding District Judge enter an Order, DENYING the petition, GRANTING judgment to the respondent and DISMISSING this action from the docket of the court.

**FACTUAL BACKGROUND**

On April 21, 2004, petitioner and four other individuals were indicted by the Grand Jury for the Western District of Virginia. Count One charged petitioner with conspiring to possess with the intent to distribute cocaine base, heroin, and marijuana, in violation of 21 U.S.C. § 846. Counts Two, Four, and Five charged petitioner with possessing with the intent to distribute cocaine base, heroin, and marijuana, in violation of 21 U.S.C. § 841. *U.S. v. Christophe Griffin*, Criminal No. 3:04CR00030. On January 27, 2005, petitioner plead guilty to Count One of the

indictment, in accordance with a written Plea Agreement filed with the court during the Rule 11 proceedings on January 27, 2005. (*Id.*, Dkt. No. 150, hereinafter cited as "Plea Ag.".)[1] In the Plea Agreement, the government agreed to move for dismissal of the remaining three counts against the petitioner. (Plea Ag. at § 4.) The government also agreed to recommend a three-level sentencing reduction for acceptance of responsibility. (*Id.* at § 5.) Petitioner agreed to waive the right to appeal "sentencing guideline issues." (*Id.* at § 8.) Petitioner also "waive[d] [his] right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgement and any part of the sentence imposed upon [him] by the court." (*Id.* at § 10.) Petitioner subsequently was sentenced to a total term of 168 months imprisonment. He did not appeal his conviction or sentence. At all relevant times, petitioner was represented by assigned counsel, Frederick T. Heblich, Jr., Esq.

Petitioner now asserts that his attorney was ineffective for failing to file a notice of appeal, and more specifically, that he asked his attorney to file a notice of appeal, but that counsel failed to do so.[2] On February 16, 2007, the undersigned appointed counsel to represent petitioner to advance the instant action on his behalf, and, on May 21, 2007, an evidentiary hearing was held before the undersigned on the remaining claim.

**EVIDENCE PRESENTED**

In addition to the record of the criminal proceedings before the District Judge, which should be judicially noticed, the undersigned received testimony presented by both petitioner and

---

[1] The Plea Agreement is part of the original record of the criminal proceedings, which may be judicially notice.

[2] In an affidavit attached to the government's motion to dismiss, Heblich disputed this allegation. Aff. Frederick Heblich, Jr., Esq. § 2(g) (Sept. 6, 2006). This dispute precipitated referral of the case for evidentiary proceedings.

2

Heblich.[3] That evidence is summarized below.

## CHRISTOPHE GRIFFIN

Petitioner testified that before and during the July 7, 2005 sentencing hearing before Judge Moon, Heblich had objected to the use of his prior state convictions to enhance his sentence. The question raised was whether petitioner had been represented by counsel in those state proceedings. In response to a motion Heblich filed to address the issue, the trial court sought to compel Griffin's testimony under oath, as the record developed for the presentencing report was unclear. Griffin refused to take the stand after consultation with Heblich. Thereupon, Heblich withdrew the objection. After allocution, which principally involved petitioner's testimony regarding conduct of his co-defendant(s), the court imposed a sentence of 168 months imprisonment, at the conclusion of which the trial judge advised petitioner of his right to appeal. (Sentcing. Hrg. Transcr. 15 (July 7, 2005).)

Petitioner told the undersigned that, within a "couple seconds" after sentence was imposed but before he was taken out of the courtroom, he told Heblich "I want to appeal this." According to petitioner, Heblich replied to the effect that "He'd talk to me." In addition, petitioner testified he called Heblich later that evening. Petitioner related that he learned from Heblich that his co-defendants received much lighter sentences, and that Heblich would "be out [to the local jail] to talk" to him. Petitioner further testified that he again informed Heblich that he wished to appeal because he "thought [he] shouldn't have to take the stand" regarding whether he had been represented by counsel in the previous state proceedings. Later that night after talking

---

[3] Once the case was referred to the undersigned for an evidentiary hearing, Dana R. Cormier, Esq. was appointed to represent the petitioner in these proceedings. Rule 8, Rules Governing Section 2255 Proceedings.

3

with Heblich, according to petitioner, he wrote a letter to Heblich, referring to the earlier telephone conversation, the disparity between his sentence and those of his co-defendants, and requesting an opportunity to discuss any other issues that could be raised "after going over [his] sentencing transcript." (Petr.'s Ex. 1.) Petitioner related that once he finished the letter, he delivered the original to a correctional officer at the jail who made a photocopy for him and mailed it that night.[4]

Petitioner stated he received a letter dated July 7, 2005 from Heblich around July 11, 2005. (Petr.'s Ex. 2.) The stated purpose of the letter was "to review your sentencing hearing and to offer what advice I have." (*Id.* at ¶ 1.) The letter summarized the July 7, 2005 sentencing proceeding, apprized petitioner of the AUSA's view of how petitioner could help himself, and informed petitioner of his right to appeal. (*Id.* at ¶¶ 2-7.) Heblich advised against an appeal and stated three specific reasons for such advice, including the prospect of jeopardizing any future Rule 35 treatment. (*Id.* at ¶ 7.) Petitioner told the court that he then called Heblich to discuss both appealing and making a proffer, in response to which Heblich said he would "set it [a proffer] up," and be over to talk about it. According to petitioner, he had no further contact with Heblich regarding any appeal until after he had been taken into the Bureau of Prisons, well past the appeal period.

On August 29, 2005, after he had been transferred to a BOP facility in Oklahoma, petitioner called Heblich regarding his transfer, and certain legal papers which were left behind during the transfer. There was no discussion between the two about an appeal. Petitioner stated

---

[4] There is nothing on the face of the letter-exhibit reflecting receipt by the officer, or signifying its being placed in the facility's mail system. No original was produced at the hearing, only the photocopy which was in the petitioner's possession.

4

that he simply assumed Heblich had filed an appeal.

However, sometime in September 2005, petitioner received a letter from National Legal Professional Associates ("NLPA") informing him that no appeal had been filed on his behalf, as he had assumed. Upon receipt of this letter, petitioner sought the advice of a jailhouse lawyer, as a result of which this action ensued. Petitioner further stated that he both called and wrote a letter dated September 29, 2005 to Heblich in which he informed Heblich told him he wanted two things: (1) a copy of *United States v. Blick*, and (2) information on some jewelry he had left at the Charlottesville jail complex. (Petr.'s Ex. 3.) He later received a letter from Heblich dated October 7, 2005, enclosing a copy of the requested decision. (Petr.'s Ex. 4.) According to petitioner, he again wrote Heblich on December 12, 2005, requesting copies of petitioner's indictment, guilty plea, hearing transcript, sentencing transcript, and judgement order. (Petr.'s Ex. 5, at ¶ 3.)

On cross examination, petitioner testified he received a copy of a Plea Agreement on January 27, 2005, following negotiations with Heblich and AUSA Timothy Heaphy ("AUSA," "AUSA Heaphy," or "Heaphy"). The resulting Plea Agreement recognized that, notwithstanding petitioner's proffer, he had not yet provided substantial assistance, though he still had the opportunity to do so. The Plea Agreement was signed immediately prior to the Rule 11 proceedings. Petitioner acknowledged that, on August 5, 2005, a month after his sentencing, he made another proffer. Petitioner continued to assert, however, that he sent the letter from the local jail on July 7, 2005, seeking an opportunity to discuss, *inter alia*, appealing the way in which the court addressed his criminal history.

On further examination, petitioner acknowledged his awareness at the time of entering his

5

plea that he could not be litigating with the government on appeal on one hand, and, on the other, be conducting himself in a way which the government would recognize as providing post-sentencing substantial assistance. However, petitioner related that Heblich did not counsel him regarding any impact on his Plea Agreement that such a dual effort might have. Moreover, petitioner denied that he specifically discussed any of the contents of the Plea Agreement with Heblich before signing it, and entering his plea.

On re-cross examination petitioner acknowledged that he received Heblich's letter of July 7, 2005, which both informed him of his right to file a notice of appeal within ten days and advised against any appeal because of the risks associated therewith. (Petr.'s Ex. 2, at 2.) Petitioner further acknowledged receipt of a "Memorandum" from Heblich, dated January 24, 2005, which served as a cover for the Plea Agreement the government was then proffering. (Govt.'s Ex. 1.) The Memorandum addressed significant details about the government's proposal, including the waiver of appellate rights, and counseled petitioner about risks and advantages, including the preservation of appellate rights, of entering a "naked" guilty plea. (*Id.* at 1-2.)[5] Petitioner testified that he understood the content of this Memorandum, and knew that the "naked" guilty plea could result in a harsher sentence, though it would preserve his right to appeal any guideline determinations made at sentencing. Petitioner stated at the conclusion of his testimony before the undersigned, however, that he was "confused" about the consequences of his choices.[6]

---

[5] It was understood by the parties and the court that the term "naked plea" referred to entry of a plea of guilty without benefit of any plea agreement, but also without waiver of any appellate or post-conviction rights.

[6] It is important to note at this juncture that petitioner never has challenged the validity of his plea, only the length of his sentence.

6

## FREDERICK HEBLICH, JR., ESQ.

Frederick T. Heblich, Jr. ("Heblich") is a licensed Virginia attorney who was appointed by the court to represent the petitioner in the underlying case. Heblich testified that once appointed, he engaged in pretrial discovery, and after reviewing the case with petitioner, he filed a motion to suppress, which the District Court heard and denied. As a result, he then counseled his client to participate in a proffer session and plea negotiations with AUSA Heaphy, who was handling the prosecution.

The government rejected petitioner's suggestion that he enter a conditional plea which would have preserved his objection to the court's ruling on petitioner's motion to suppress. The government also rejected petitioner's efforts to limit the drug weight attributable to him to between 50 and 150 grams. Instead, the government offered a rather standard agreement which provided, *inter alia*, waivers of appellate rights and rights to collaterally attack his conviction and sentence. Negotiations broke down after the petitioner's proffer was unacceptable to the government, and the case remained on track for trial on January 29, 2005.

After further discussions with petitioner, on January 20, 2005, Heblich faxed Heaphy, communicating his client's interest in pleading guilty. (Govt.'s Ex. 2.) Petitioner's conditions were set forth in the communique, which included capping the drug weight below what the government previously had offered and preserving an appeal of court's denial of petitioner's suppression motion. *(Id.* at ¶ 3.)

The government responded with a proposal which Heblich then presented to petitioner both in writing, and in person. (Govt.'s Ex. 1.) The proposal did not incorporate petitioner's cap on the drug weight, and it required waiver of petitioner's right to appeal the suppression decision. However, it provided for a three-level downward adjustment in petitioner's sentencing levels for

7

acceptance of responsibility, limited the government from seeking any enhancement for petitioner's role in the offense, and called for dismissal of three other counts in the indictment. (*Id.* at 1.) Heblich's written communication further detailed other sentencing aspects of the case, and included an assessment of a "naked" guilty plea, which essentially would have required that petitioner take his chances on whether the court would sentence petitioner below the Guideline range, and on whether he would be given an opportunity for a future reduction in sentence for his substantial assistance.

Heblich testified that immediately prior to the January 27, 2005 plea proceeding, he presented to petitioner the Plea Agreement finalized during his negotiations with the government. They reviewed the Plea Agreement together, the petitioner initialed each page, and he signed the final page. Despite reviewing and signing the Plea Agreement, petitioner indicated he was "confused" during the plea proceedings, whereupon Heblich requested a thirty minute delay to counsel the client further. Thereafter, petitioner proceeded in the Rule 11 hearing and entered his plea of guilty. Heblich denied ever instructing petitioner simply to "just say yes to everything" the court asked during the Rule 11 colloquy.[7] Sentencing was postponed to allow the preparation of a presentencing report.

On July 7, 2005, petitioner appeared with Heblich for sentencing. Heblich related that petitioner was uncomfortable with the use of his prior state convictions, and, accordingly, Heblich filed an objection on the grounds they were uncounseled convictions. However, when the District Judge sought have petitioner testify in this respect, petitioner informed Heblich that,

---

[7]The undersigned notes that a "Yes" answer to all the questions posed, which include those relating to sobriety, mental status and coercive forces at play, would have required the court, at least, to interrupt the proceedings to determine the voluntariness of the plea or even to terminate the proceedings.

8

in fact, he did have counsel in those state proceedings. Heblich then advised his client he could not testify and deny he had counsel because he would be perjuring himself. On the other hand, petitioner was advised that, by not testifying, the court necessarily would overrule the objection. Thus, Heblich withdrew the objection.

Heblich further testified that he never received petitioner's July 7, 2005 letter purportedly drafted in jail the night following his sentencing, in which petitioner sought an opportunity to discuss an appeal with Heblich. By the same token, Heblich testified that he wrote petitioner on July 7, 2005, reviewing the July 7, 2005 sentencing proceedings and advising petitioner of his right to note an appeal within ten (10) days of the entry of the judgement order. (Petr.'s Ex. 2 at ¶ 8.) In addition, Heblich advised petitioner against appealing because there were no meritorious grounds, the right to appeal had been waived, and any appeal would jeopardize petitioner's chances for a future Rule 35 motion which could later reduce petitioner's sentence. (*Id.*)

Heblich related that the next contact he had with petitioner was on July 26, 2005, when they met at the local jail in person. Heblich revealed that, during this meeting, the two discussed petitioner's proffer which was to be made on August 5, but there was no discussion of an appeal. The August 5, 2005 proffer, however, was not acceptable to the government and unavailing in petitioner's efforts to earn a substantial assistance motion. The next contact Heblich had with petitioner was when he received petitioner's September 29, 2005 letter from FCI Cumberland requesting that Heblich send him a copy of *United States v. Blick* and look into the location of some personal property left at the local jail. (Petr.'s Ex. 3.) Heblich replied on October 7, 2005. (Petr.'s Ex. 4.) Later Heblich received petitioner's December 12, 2005 letter requesting a laundry list of materials and transcripts. (Petr.'s Ex. 5.) Heblich saw nothing in this letter about an

9

appeal, timely or not.

According to Heblich on cross examination, his discussions with petitioner in January, 2005 centered on drug weight, suppression of his prior criminal convictions, substantial assistance and the nature and risks of a "naked" guilty plea. He described petitioner, at that time in the process, as reluctant and confused. Heblich also stated that, in the end, the entire matter relating to petitioner's alleged uncounseled state convictions boiled down to a practical problem: taking the stand and telling the court what petitioner told Heblich, or taking the stand and telling another story which would have been untrue as Heblich knew it.

Heblich admitted that he never counseled petitioner on the meaning to attach to the District Judge's advice of rights at sentencing, whether there were factors to consider in withdrawing his plea or the state of the law regarding waiver of appellate or post-conviction rights. He reaffirmed that the two never met between July 7 and July 26 to discuss an appeal, had no recall of receiving any call from petitioner in the local jail on July 7, 2005, or any call, for that matter, asking him to file a notice of appeal. In answer to a question by the court, Heblich emphatically related that had he received such a call, and particularly the letter of July 7, 2005 which plaintiff testified he sent, he would have counseled his client against an appeal but, nevertheless and out of his duty to his client, would have honored his request no matter how frivolous.

Heblich testified that petitioner never expressly asked for an appeal, nor did he make it reasonably clear that he desired to appeal. According to Heblich, petitioner was attempting to cooperate with the government at all stages in hopes that he could earn a substantial assistance motion which was antithetical to any appeal.

## APPLICABLE LAW

### Ineffective Assistance of Counsel Standard

Where the representation of defense trial counsel in a criminal case falls below objective standards of reasonableness, and this deficient performance has prejudiced the defendant, the defendant's Sixth Amendment right to effective assistance of counsel has been violated. *Strickland v. Washington*, 466 U.S. 668 (1984). While that standard applies to cases where, as here, the former defendant, now the petitioner, claims his trial counsel failed to file a notice of appeal, though, in applying the standard, the court must scrutinize counsel's conduct as of the time it occurred with a high degree of deference. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

Counsel's conduct falls below the standard where he/she ignores specific instructions to file an appeal. *Flores-Ortega*, 528 U.S. at 477. By the same token, no defendant could complain when no appeal is taken because the defendant has so instructed trial counsel. *Id*. However, where it is unclear that the defendant clearly communicated a desire to appeal, the question becomes "whether counsel in fact consulted with the defendant about an appeal." *Flores-Ortega*, 528 U.S. at 478. The term "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. If counsel does so consult, then his/her performance cannot be considered deficient, unless, after consultation, counsel fails to follow the client's instructions regarding an appeal. *Id*. However, if counsel does not so consult, the court then must determine whether such failure, itself, constitutes deficient performance. *Id*.

There is no bright line or per se rule in answering this inquiry. *Id*. Generally, however, there is a constitutional duty to consult about an appeal when "there is reason to think either (1)

11

that a rational defendant would want an appeal..., or (2) that this particular defendant reasonably demonstrated to counsel that he[/she] was interested in appealing." *Id.* at 480 (quoted and applied in *U.S. v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000)).[8] The court must examine counsel's actions based upon all information which trial counsel knew or should have known at the time, and while reasonable strategic choices by counsel ordinarily would be afforded some deference, failing to consult about an appeal "cannot be [considered] a strategic choice." *Id.* at 480-481.

Ordinarily under *Strickland*, when the court determines that the lawyer's performance constitutionally is deficient, as a result of which there has been an unfair judicial review, the assessment turns to whether the defendant has shown that he/she was prejudiced by such deficient performance. *Id.* Where the claim is premised on alleged deficient performance in failing to perfect an appeal, however, the defendant is prejudiced by a forfeiture of the appellate process altogether, not simply a fair judicial review. *Flores-Ortega,* 528 U.S. 470, 481. Nevertheless, prejudice is not presumed, and the defendant-petitioner still must show "a reasonable probability that, but for counsel's deficient failure to consult with him[/her] about an appeal, he[/she] would have timely appealed." *Id.* at 484.[9]

**FINDINGS AND CONCLUSIONS**

From the evidence presented at the plenary hearing and the record as a whole, the

---

[8] The Fourth Circuit Court of Appeals has adopted the *Flores-Ortega* standard for a petitioner seeking to establish a Sixth Amendment violation based on counsel's failure to appeal. *U.S. v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000).

[9] Just like assessing what counsel knew during the relevant time frame, the undersigned believes the court should assess the probability of whether the defendant-petitioner likely would have appealed based on what he knew at the time rather than by the use of 20/20 hindsight.

12

undersigned finds as follows:

1. Petitioner received effective counseling regarding his right to appeal.

Not only was petitioner informed of the right by the District Judge on the date of sentencing, but also Heblich forwarded to him and he received a letter dated July 7, 2005 detailing the events surrounding his sentence, advising of his right to appeal, and advising against an appeal for the reasons stated therein. Moreover, this petitioner could not have been more familiar with the issues in the case. He had been intricately involved with Heblich in efforts to negotiate a plea agreement terms of which were more favorable than the government wished to offer. He reviewed every ideation of what would become his Plea Agreement, understood its terms and was satisfied with it at the time he entered his plea.

Moreover, he took steps within the bounds of the agreement to challenge certain sentencing factors, in particular, some of his prior state convictions, on the grounds they were uncounseled. While petitioner eventually became dissatisfied with how the trial court addressed his objection, it is clear that petitioner willfully invited the court to impose on him the burden of clarifying what he claimed to be an ambiguity in the presentencing information concerning whether he had been represented by counsel in those cases. In the process, petitioner placed Heblich in both a legal and ethical dilemma by privately admitting to him during the sentencing proceedings that he was counseled but, somehow, harboring a complaint with Heblich's decision not to place him on the stand and withdrawing the objection because it was rendered moot by petitioner's own conduct.

While petitioner presented evidence to the undersigned that he was confused about many details of the plea agreement being offered by the government, the option to enter a "naked" plea

13

and, subsequently, his sentence, the undersigned does not find there was any confusion on petitioner's part after the original proceedings in January, 2005 were continued, and Heblich had the opportunity to counsel petitioner concerning his options. One of those options would leave open petitioner's right to appeal but also require the entry of a plea without any agreement with the government. The other, for all practical purposes, would foreclose any appeal because the "keys" to his future would lie in the degree to which his later assistance would be seen by the government as sufficiently substantial to support a Rule 35 motion. How petitioner wished to play the angles this information is not the point. The point is that Heblich had counseled petitioner to such an extent prior to entering his plea that it not possible for the undersigned to conceive that petitioner did not know his options upon sentencing. He simply did not like the outcome in the sentence imposed to which his own courtroom conduct may have contributed.

This is confirmed by the fact that petitioner does not challenge the validity of his plea. In addition, he disputes neither the advice of rights provided by the District Judge at the conclusion of the sentencing proceedings nor receipt of Heblich's letter of July 7, 2005. (Petr.'s Ex. 2.) Interestingly, the letter was followed by petitioner's making further proffers to the government, signaling by his own conduct that he had chosen the post-sentencing route of providing substantial assistance in furtherance of the Plea Agreement, rather than the appellate route, which would have contravened his Plea Agreement.

It is true that Heblich acknowledged on cross examination— which revealed that he did not give any specific advice about the precise subject of an appeal— the meaning of the sentencing judge's advice of rights, the precise impact appealing might have on plaintiff under the Plea Agreement, and the factors relevant to withdrawing his plea. These facts, however, are reduced

to insignificance in the undersigned's mind, given the context of the evidence as a whole. None of this would diminish how Heblich's representation reasonably had informed petitioner of his options, including the unreasonable option of appealing his sentence. Again, that petitioner sought to provide post-conviction assistance speaks volumes of what he knew and thought at the time. Heblich's representation was not ineffective.

2. Petitioner has failed to prove by the preponderance of the evidence that he made any request of Heblich to appeal the sentence, either while still in the courtroom immediately after sentence was imposed, or at any other time within the ten-day period permitted to note an appeal.

For the reasons set forth above, the undersigned also declines to credit petitioner's testimony about the content of the purported conversation he had with Heblich in the courtroom immediately following sentencing. In particular, the undersigned cannot credit petitioner's testimony that he authored and mailed the July 7, 2005 letter to Heblich (Petr.'s Ex. 1) when and as he detailed. In fact, the undersigned believes this document was created well after the period for appeal had lapsed, even after his transfer into the BOP. By contrast, the undersigned credits Heblich's unhesitating confirmation of receiving other written and telephonic correspondence from petitioner, including the letter of September 29, 2005. (Petr.'s Ex. 3.) In light of his testimony that, had petitioner sought an appeal he would have filed a notice thereof irrespective of how frivolous, no reason appears to the undersigned for Heblich to otherwise deny receipt of the July 7 document which petitioner claimed he sent.

On the other hand, there is substantial and credible evidence that Heblich sent, and petitioner received, the letter dated July 7, 2005, in which Heblich detailed sentencing and appellate options, both good and bad. (Petr.'s Ex. 2.) When the undersigned considers the advice

15

Case 7:06-cv-00396-NKM-BWC   Document 22   Filed 06/20/07   Page 15 of 17   Pageid#: 279

of rights given by the District Judge at the conclusion of the sentencing proceeding, coupled with his post-sentencing conduct of making additional proffers in furtherance of his Plea Agreement and with the credible testimony of Heblich that if petitioner had asked him to appeal he would have done so no matter how frivolous the appeal might have been, the undersigned finds that petitioner did not instruct Heblich to appeal, nor did he even express enough of a desire to do so as to have triggered a duty on Heblich's part to note an appeal.

3. Even if Heblich's representation was deficient, which the undersigned does not believe, petitioner has failed to show by a preponderance of the evidence that, but for any such deficiency, he would have appealed.

It seems quite disingenuous to the undersigned that petitioner would claim, on one hand, that he asked Heblich to appeal but, on the other, attempt to persuade the court that he did not know his rights and would have appealed in lieu of taking other action to reduce his sentence. If not disingenuous, the claim certainly is *post hoc*. Be that as it may, this contrast gives the undersigned some insight into the credibility of his assertion that he wanted to appeal during the period when a notice thereof could have been filed. Instead, the context of the evidence as a whole further leads the undersigned to believe that petitioner knowingly made choices about his course of conduct, and only when those choices did not produce the result intended was there remorse and a change in his desires. The entire matter relating to whether he had a desire to appeal during the appropriate period is another example of this, and the undersigned concludes that appeal was not on his mind until well after it was too late, even until he was transferred into the BOP and met there with jailhouse lawyers. To put it bluntly, petitioner gave every appearance during the hearing of having played all his options against the middle.

**RECOMMENDATION**

16

For the foregoing reasons, the undersigned hereby RECOMMENDS that an Order enter DENYING petitioner's motion to vacate his sentence and DISMISSING this action from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ 
U. S. Magistrate Judge

June 20, 2007
Date