CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED Roanoke
AUG 2 9 2007
JOHN F. CORCORAN, CLERK
BY: /s/ Jean Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTOPHE GRIFFIN, ) | |
| Petitioner, ) | Civil Action No. 7:06cv00396 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Hon. Norman K. Moon |
| Respondent. ) | United States District Judge |

Christophe Griffin, a federal inmate proceeding pro se, filed this action as a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. The action is presently before the court on Respondent's Motion to Dismiss and the Report and Recommendation of Magistrate Judge B. Waugh Crigler. For the following reasons, the court will adopt the Report and Recommendation and grant Respondent's Motion to Dismiss.

I.

On April 21, 2004, Griffin was charged in a five-count indictment returned by a grand jury in the Western District of Virginia. Count One charged Griffin with conspiring to possess with the intent to distribute cocaine base, heroin, and marijuana, in violation of 21 U.S.C. §§ 841 and 846. Counts Two, Four, and Five charged Griffin with possessing with the intent to distribute cocaine base, heroin, and marijuana, in violation of 21 U.S.C. § 841.

On January 27, 2005, pursuant to a written plea agreement, Griffin pled guilty to Count One of the indictment. (Plea Ag. at 1). In this agreement, the United States agreed to move to dismiss the remaining counts against Griffin and to recommend a three-level reduction to his total offense level, for his acceptance of responsibility. (Plea Ag. at 3). The Government also agreed to leave open the opportunity for Griffin to earn a substantial assistance motion. (Plea Ag. at 6). In exchange, Griffin agreed to waive his right to appeal "sentencing guidelines issues." (Plea Ag. at

5). Griffin also, in a separate section, agreed to "waive [his] right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any part of the sentence imposed upon [him] by the court." (Plea Ag. at 5). Additionally, Griffin waived "any claim [he] may have for ineffective assistance of counsel known and not raised by [him] with the court at the time of sentencing." (Plea Ag. at 8).

Griffin initialed every page of the plea agreement, including the page containing the waiver of collateral-attack rights. By signing the plea agreement, Griffin affirmed that he had read the plea agreement, that he had carefully reviewed every part of the agreement with his attorney, that he understood the agreement, and that he was voluntarily agreeing to its terms.

During the plea hearing, Griffin stated under oath that he was a high school graduate, that he was in good health, and that he was not under the influence of any medication or alcoholic beverage. (Plea Hearing Tr. at 2-3). The court established that Griffin was aware of the nature of the charges against him, that he understood the range of punishment that he faced, that he understood how the United States Sentencing Guidelines might apply in his case, and that he knew that he had the right to a jury trial. (Tr. at 8-13). The court also established that Griffin was aware that he would be bound by his plea agreement, even if his sentence was more severe that he expected. (Tr. at 14).

The court instructed Griffin's attorney to review the salient portions of the plea agreement that Griffin had reached with the Government. In response, the attorney specifically advised Griffin that he was waiving "the right to appeal sentencing issues," and that he was waiving "the right to collaterally attack the judgment through a 2255." (Tr. at 16). Upon being asked if the agreement described by his attorney was consistent with his own understanding of the agreement, Griffin responded in the affirmative. (Tr. at 17-18).

The court also specifically inquired as to whether Griffin was voluntarily pleading guilty.

2

Griffin affirmed that he had discussed the plea agreement with his attorney before he signed it, and that no one had made any promises or induced him to plead guilty. (Tr. at 18). Griffin also affirmed that he was satisfied with the services and advice that his attorney had provided. (Tr. at 8).

After all of the court's questions, Griffin stated that he still wanted to plead guilty. (Tr. at 26). The court ultimately found that Griffin was "fully competent and capable of entering an informed plea," and that his plea of guilty was "knowing and voluntary." (Tr. at 26).

On July 7, 2005, Griffin was sentenced at the bottom of the applicable guideline range, to a total term of imprisonment of 168 months. (Sent. Hearing Tr. at 14). Before the court pronounced the sentence, Griffin was given the opportunity to address the court. (Tr. at 13). At that time, Griffin did not express any desire to withdraw from the plea agreement, or voice any complaints regarding the quality and effectiveness of his attorney's representation. Instead, Griffin asked if he could "find favor in the court's sight." (Tr. at 13). He did not appeal his conviction or sentence.

On June 29, 2006, Griffin filed the instant § 2255 motion, raising the following claims that counsel was ineffective in failing to:

- A. Object to the waiver clauses (right to appeal, collaterally attack, and pursue an ineffective assistance of counsel claim) in the plea agreement;
- B. Meet and consult with Griffin before the plea;
- C. Investigate discovery materials;
- D. Interview defense witnesses;
- E. Prepare a defense;
- F. Investigate Government witnesses and prepare an attack of the Government's case;
- G. Compel and secure attendance of defense witnesses at the hearing;
- H. File a notice of appeal after Griffin requested; and

3

I. Object to the calculation of his criminal history category with regard to prior New York state convictions, in his Pre-Sentence Report ("PSR").

Respondent filed a Motion to Dismiss on September 8, 2006. After Griffin responded, the court took Respondent's motion to dismiss under advisement and ordered an evidentiary hearing to determine whether Griffin requested his attorney to file an appeal. The court referred the matter to United States Magistrate Judge B. Waugh Crigler pursuant to 28 U.S.C. § 636(b) for a recommended disposition of the case. An evidentiary hearing was held on May 21, 2007 and the Magistrate Judge filed a Report and Recommendation, finding that Griffin received effective counseling regarding his right to appeal, Griffin failed to prove by a preponderance of the evidence that he requested counsel to file an appeal, and that Griffin failed to show by a preponderance of the evidence that, but for the alleged deficiency, he would have appealed. The Magistrate Judge recommended that Respondent's Motion to Dismiss be granted. However, the Magistrate Judge did not address Griffin's remaining claims of ineffective assistance. Griffin filed objections within the ten days allotted under 28 U.S.C. § 636(b), reiterating the arguments made in his brief supporting his petition and at the evidentiary hearing.

## II.

The Magistrate Judge's Report and Recommendation only addresses Griffin's claim that counsel was ineffective in failing to file a notice of appeal upon Griffin's request. Griffin objects to the following findings in the Magistrate Judge's Report and Recommendation:

1. Griffin received effective counseling regarding his right to appeal;

2. Griffin failed to prove by a preponderance of the evidence that he requested counsel to file an appeal; and

3. Griffin failed to show by a preponderance of the evidence that, but for the alleged

4

deficiency, he would have appealed.

In accordance with 28 U.S.C. § 636(b)(1), the court shall do a de novo review of the Magistrate Judge's findings to which Griffin objected.

In order to establish a claim of ineffective assistance of counsel, Griffin must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's alleged deficient performance, the outcome of his case would have been different. Strickland v. Washington, 466 U.S. 668, 669 (1984); see also Williams v. Taylor, 529 U.S. 362 (2000). "An attorney who fails to file an appeal after being instructed by his client to do so is per se ineffective." United States v. Witherspoon, 231 F.3d 923, 926-27 (4th Cir. 2000) (citing Roe v. Flores-Ortega, 528 U.S. 470 (2000)); see also United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993).

Griffin alleges that he asked trial counsel to file an appeal "right after" his sentence was imposed, again in a later telephone conversation, and finally in a letter he sent to counsel on July 7, 2005. Griffin's time to note an appeal expired on August 2, 2007, ten (10) business days after final judgment was entered on July 19, 2007. Griffin's trial counsel, Frederick Heblich, Jr. ("Heblich") testified that Griffin never asked him to file an appeal, either before or after that date. (Tr. at 82). He also testified that he never received the July 7, 2005 letter from Griffin and that he had no memory of a telephone call from Griffin. (Tr. at 103-04). He further testified that had he received such a call or letter from Griffin, he would have counseled his client against an appeal, but nevertheless, out of a duty to his client, he would have noted the appeal, no matter how frivolous. (Tr. at 107).

Heblich testified at the evidentiary hearing that throughout his representation of Griffin, he received many letters, phone calls, and faxes from Griffin. (Evidentiary Tr. at 104-05). It is undisputed that on July 7, 2007, the day Griffin was sentenced, Heblich sent a letter to Griffin

5

advising him of his right to appeal and expressing his opinion that filing an appeal would not be in Griffin's best interest for various reasons. Heblich also acknowledged that in mid-July he received a telephone call from Griffin wherein Griffin wanted to set up another proffer session, but did not request Heblich to file a notice of appeal. (Tr. at 85). During that conversation, Heblich suggested that they meet in person to discuss the proffer. Thereafter, Heblich met with Griffin in person on July 26, 2007 at the jail. (Tr. at 85). Again, Griffin made no mention of filing an appeal. Heblich and Griffin met once again on August 5, 2007 at a proffer session with the Government and, again, Griffin made no mention of an appeal. Heblich also testified that he continued to receive letters from Griffin after that session. (Tr. at 89). Upon a review of the transcripts of the evidentiary hearing and all pertinent portion of the record, the court finds that the weight of the evidence supports Heblich's testimony that Griffin never asked him to note an appeal.

Because the court finds that Griffin did not request counsel to file an appeal, the next issue the court must determine is whether trial counsel consulted with Griffin regarding the advantages and disadvantages of filing an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. In this case, Heblich discussed the plea agreement's waiver provisions with Griffin and advised him of his right to appeal after sentencing, including his assessment that it was not in Griffin's interest to file an appeal. Thus, counsel met his duty to consult. In any event, it does not appear that there are any non-frivolous grounds for appeal. The only issue which Griffin now contends should have been raised on appeal is the use of his New York state prior convictions in the PSR's calculation of his criminal history category. Based on the waiver in his plea agreement, the only claims which Griffin could raise on appeal, despite the waiver, were that the sentence was imposed in excess of the maximum penalty allowed or was based on the consideration of a constitutionally impermissible factor such as race. United States v. Lemaster, 403 F.3d 216, 218 n.2 (4th Cir. 2005)

6

(citing United States v. Marin, 961 F.2d 493 (4th Cir. 1992)). As neither of these issues have been raised, the court finds that Griffin had no non-frivolous grounds on which to base his appeal.

Moreover, in exchange for his guilty plea and waivers of his rights to appeal sentencing guideline factors and collaterally attack, Griffin received significant benefits for his bargain. Pursuant to the plea agreement, the Government agreed to dismiss three other counts of the indictment, Griffin received a three-level reduction in his total offense level for his acceptance of responsibility, the Government agreed not to seek an enhancement based on his leadership role in the offense, and the agreement left open the possibility that Griffin could earn a motion for substantial assistance. Without those benefits, on Count One alone, Griffin faced a statutory punishment range of ten years to life plus a $4 million dollar fine; he would not have received the three-level reduction to his total offense level for his acceptance of responsibility, which would have increased his Sentencing Guidelines range for that count to 235-293 months; he risked an enhancement based on his role in the offense; and he also risked convictions on the three other counts in the indictment.

In light of Griffin's waiver of his right to appeal any sentencing guideline factors, the fact that his lawyer wrote him and provided his assessment about an appeal, the absence of any non-frivolous ground for appeal, the significant benefit to Griffin's plea bargain, and the fact that the court clearly apprised Griffin of his right to appeal, the court finds that counsel was not ineffective concerning the noting of an appeal in this case.

### III.

With regard to Griffin's remaining claims of ineffective assistance, the court finds that Griffin's motion must be dismissed because he specifically waived his right to collaterally attack his

7

conviction and sentence and his remaining claims fall within the scope of that waiver.[1] The United States Court of Appeals for the Fourth Circuit has held that a waiver of collateral-attack rights is valid as long as the waiver is knowingly and voluntarily made. Lemaster, 403 F.3d at 220. The determination of whether a waiver is knowing and voluntary depends "upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused." United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992). The Fourth Circuit has emphasized that "a defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity.'" United States v. White, 366 F.3d 291, 295 (4th Cir. 2004) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Thus, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (quoting Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975)). If a district court determines that a petitioner knowingly and voluntarily waived his collateral-attack rights, and that the petitioner's claims fall within the scope of that waiver, the court must dismiss the § 2255 motion without addressing the merits of those claims. See id. at 222, United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005) (discussing appeal waivers).

Having fully considered the parties' arguments, the court agrees with Respondent that Griffin knowingly and voluntarily waived his right to collaterally attack his conviction and sentence. The

---

[1] Griffin's remaining claims are that counsel was ineffective in failing to object to the waiver clauses (right to appeal, collaterally attack, and pursue an ineffective assistance of counsel claim) in the plea agreement; meet and consult with Griffin before the plea; investigate discovery materials; interview defense witnesses; prepare a defense; investigate Government witnesses and prepare an attack of the Government's case; compel and secure attendance of defense witnesses at the hearing; and object to the calculation of his criminal history category with regard to prior New York state convictions, in his Pre-Sentence Report ("PSR").

8

language and meaning of the waiver of collateral-attack rights is clear and unmistakable. By signing the plea agreement, Griffin affirmed that he had carefully reviewed the agreement with his attorney and that he understood all of its terms. Moreover, during the plea hearing, his own attorney summarized the terms of the plea agreement, including that he was waiving his appeal and collateral-attack rights. (Plea Hearing Tr. at 16). In response to the court's questions, Griffin verified that the description of the plea agreement provided by the prosecutor and his attorney was consistent with his own understanding of the agreement's terms. (Tr. at 11, 18, and 26). Therefore, there is no basis on the record for the court to conclude that Griffin's decision to accept the waiver was an unknowing or involuntary act.

Next, the court must consider whether the remaining claims fall within the scope of Griffin's waiver. The Fourth Circuit has recognized a narrow class of claims that fall outside the scope of a valid waiver of appellate or collateral-attack rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on an constitutionally impermissible factor such as race, fall outside the scope of the waiver. See United States v. Blick, 408 F.3d 162, 171 (4th Cir. 2005); United States v. Attar, 38 F.3d 727, 732 (4th Cir. 1994); LeMaster, 403 F.3d at 220 n. 2; United States v. Embree, 169 Fed. Appx. 761, 762 (4th Cir. 2006). Griffin does not allege that his sentence was above the statutory maximum or that its imposition was based on a constitutionally impermissible factor. All of Griffin's remaining claims, except that relating to counsel's alleged failure to object to the calculation of Griffin's criminal history category in his PSR, pertain to times prior to Griffin signing the plea agreement and, thus, could reasonably have been foreseen when he entered his plea. Griffin's claim that counsel was ineffective in failing to object to the calculation

9

of his criminal history category in his PSR is also within the scope of the waiver. A claim of ineffective assistance at sentencing proceeding only falls outside the scope of the collateral attack waiver if the defendant has been completely deprived of counsel. Attar, 38 F.3d at 732-33. A claim that counsel was ineffective in failing to object to information contained in the PSR does not suggest that the defendant was wholly deprived of counsel and, thus, does not fall outside the scope of the collateral attack waiver. See Lemaster, 403 F.3d at 219-20 (finding that because defendant knowingly and voluntarily waived his right to appeal and collaterally attack his conviction, his claims that counsel was ineffective by failing to object to the PSR and in failing to move for a downward departure were precluded from federal review).

For the reasons stated, the provisions of the plea agreement and the transcript from the plea hearing conclusively establish that Griffin knowingly and voluntarily waived the right to collaterally attack his convictions and sentence. Because none of Griffin's remaining claims fall within the narrow class of claims that have been found to fall outside the scope of a valid waiver, his § 2255 motion must be dismissed. Accordingly, the court will grant Respondent's Motion to Dismiss.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to Petitioner.

ENTER: This 29th day of August, 2007.

United States District Judge